90 P.3d 1088 (2004)
STATE of Washington, Respondent,
v.
Kristin TAGAS, Appellant.
No. 51382-6-I.
Court of Appeals of Washington, Division 1.
May 3, 2004.
Publication Ordered May 25, 2004.
*1089 Dana M. Nelson, Nielsen Broman & Koch PLLC, Seattle, WA, for Appellant.
Seth Aaron Fine, Charles F. Blackman, Snohomish County Pros Ofc, Everett, WA, for Respondent.
PER CURIAM.
A police officer, before giving appellant Kristin Tagas a ride in a patrol car, obtained Tagas' consent to search her purse. Tagas argues her consent was not voluntary because the officer did not inform her of her right to refuse consent. Under article I, section 7 of Washington's Constitution, notification of the right to refuse consent to a search is required in the context of knock and talk investigations, but not in the circumstances of this case. We affirm the conviction for possession of cocaine.
*1090 Officer Blessum stopped a pick-up truck for erratic driving on the freeway when she saw it swerving in its own lane and making unnecessary lane changes. The driver agreed to perform field sobriety tests. The field sobriety tests indicated that the driver was not under the influence of alcohol. The driver said he suffered from multiple sclerosis, which affects his balance. Although Officer Blessum decided not to cite the driver, she believed he was impaired and would not allow him to continue to drive. Nor would she allow Kristin Tagas, the only passenger in the truck, to drive the truck away, because Tagas did not have a valid license with her. Officer Blessum offered to take Burkus and Tagas to a nearby restaurant so that they could call someone for a ride. They agreed, and got into the back of the patrol car.
Tagas brought her purse with her into the patrol car. For officer safety purposes, Officer Blessum asked Tagas to consent to a search of the purse. According to Officer Blessum's testimony at the suppression hearing, if Tagas had refused, she would have allowed Tagas to put the purse either in the trunk of the patrol car or in the front seat with Officer Blessum. But the officer did not inform Tagas that these other options were available if she refused to consent to the search. Tagas consented.
Upon opening the purse, Officer Blessum recognized drug paraphernalia. She removed Tagas from the patrol car and placed her under arrest for possession of the paraphernalia. At the station, police conducted an inventory search of the purse and found crack cocaine in a crumpled up piece of paper.
The State charged Tagas with one count of possession of cocaine. Tagas challenged the legality of the search of her purse. The trial court ruled that the search was justified by consent, and denied the motion to suppress the fruits of the search. Tagas then stipulated to the police reports and was found guilty in a bench trial. Tagas appeals from the ruling denying her motion to suppress.
At the conclusion of the hearing on a motion to suppress, the trial court is to enter written findings of fact and conclusions of law. CrR 3.6(b). The trial court did not do this until after Tagas filed her opening brief in this appeal. While this practice is disfavored, a conviction will not be reversed for tardy entry of findings unless the defendant can establish either that she was prejudiced by the delay or that the findings and conclusions were tailored to meet the issues presented in her appellate brief. State v. Gaddy, 114 Wash.App. 702, 704-705, 60 P.3d 116 (2002), rev. granted, 150 Wash.2d 1001, 77 P.3d 651 (2003). Tagas does not argue that she was prejudiced by the delay, or that the findings and conclusions were tailored.
Tagas contends there is no evidence to support the finding that Officer Blessum did not tell them that she would not allow them to remain on the freeway[1] and the finding that Officer Blessum did nothing to lead them to believe they could not leave.[2] But in view of our disposition, it is unnecessary to decide whether these findings are supported by substantial evidence. Even if the actual circumstances were more coercive than the trial court's findings reflect, the only issue raised by Tagas is a legal onewhether knowledge of the right to refuse consent is critical to giving a valid consent to a search in a coercive environment. Thus, the only fact of consequence in Tagas' challenge is undisputed. Officer Blessum, prior to her search, did not inform Tagas of her right to refuse consent.
We turn then to the conclusion of law that the officer obtained a valid consent before searching the purse. Conclusions of law in a suppression order are reviewed de novo. State v. Mendez, 137 Wash.2d 208, 214, 970 P.2d 722 (1999).
Subject only to a few exceptions, warrantless searches are per se unreasonable under the Fourth Amendment of the United States Constitution and under article I, section 7 of Washington's Constitution. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Ferrier, *1091 136 Wash.2d 103, 111, 960 P.2d 927 (1998). A search that is conducted pursuant to consent is one of these exceptions, but only if the consent is voluntary. Whether consent was voluntary normally is a question of fact to be determined from the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), State v. Bustamante-Davila, 138 Wash.2d 964, 981, 983 P.2d 590 (1999). When the subject of the search is not in custody and the question is whether consent is voluntary, knowledge of the right to refuse consent is not a prerequisite of voluntary consent. State v. O'Neill, 148 Wash.2d 564, 588, 62 P.3d 489 (2003) (citing Schneckloth, 412 U.S. at 248-49, 93 S.Ct. 2041).
Tagas does not argue that the search was invalid under the totality of the circumstances. Rather, Tagas argues there is a different test under the state constitution.
A party who seeks to establish that the state constitution provides greater protection than the United States Constitution must engage in the six-factor analysis set forth in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). A party is relieved of performing a Gunwall analysis only when an analysis in a previous case has determined that a provision of the state constitution independently applies to a specific legal issue. State v. Ladson, 138 Wash.2d 343, 348, 979 P.2d 833 (1999). Tagas, who has not provided a Gunwall analysis, argues that Ferrier has already determined that greater protection is available under the State Constitution when the issue is the validity of a consent to a search. Ferrier holds that under article 1, section 7, police must advise a homeowner of the right to refuse consent when using the knock and talk method of investigation. Ferrier, 136 Wash.2d at 118, 960 P.2d 927.
Key to the Gunwall analysis in Ferrier was a concern about warrantless searches of a private residence. The appellant satisfied the need for an independent analysis of Gunwall factor four (pre-existing state law) and factor six (the privacy interest at issue is a matter of particular state or local concern) by showing that the closer an intrusion is to a home, the greater the protection under Washington caselaw. Ferrier, 136 Wash.2d at 111-114, 960 P.2d 927. The Court was explicit that the privacy interest at issue was privacy in the home, not the voluntariness of consent:
Ferrier does not argue that the voluntary standard of consent is unconstitutional under article I, section 7. The core of her argument is that the police here violated her expectation of privacy in her home because they conducted the knock and talk in order to search her home, thereby avoiding the general requirement that a search warrant be obtained. Indeed, Ferrier argues that the violation of her privacy right was one of the factors that made her eventual consent involuntary.
Ferrier, 136 Wash.2d at 114, 960 P.2d 927.
In this case, Tagas was using a public highway; her expectation of privacy in her home is not at issue. And Officer Blessum's request to search the purse was not designed to avoid the necessity of obtaining a search warrant; the search was a measure to protect officer safety. Under these circumstances it is difficult to conclude that Ferrier relieves Tagas of the obligation to present an independent Gunwall analysis, at least as to Gunwall factors four and six.
But even assuming her argument is reviewable, it fails. The Supreme Court has expressly limited the scope of the Ferrier warning to knock and talk procedures. For example, where entry is sought to question a resident rather than to search the home, Ferrier does not require police to inform the owner of the right to refuse consent. State v. Khounvichai, 149 Wash.2d 557, 69 P.3d 862 (2003). When the state is not employing the knock and talk procedure, the court employs a totality of circumstances test to determine whether consent to search is valid. State v. Bustamante-Davila, 138 Wash.2d 964, 981-82, 983 P.2d 590 (1999); State v. Thang, 145 Wash.2d 630, 637, 41 P.3d 1159 (2002). Ferrier, in short, does not require warnings in every case where police obtain search authority by consent. State v. Williams, 142 Wash.2d 17, 26, 11 P.3d 714 (2000).
We conclude that under article 1, section 7, the validity of Tagas' consent to the search of *1092 her purse did not depend on the officer advising her of her right to refuse consent to search. The court did not err in applying the totality of the circumstances test and concluding the officer obtained a valid consent.
Affirmed.
NOTES
[1] Clerk's Papers at 59.
[2] Clerk's Papers at 62.