# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49601-1-II |
| Respondent, | consolidated with |
| v. | No. 49633-0-II |
| MIGUEL A. TRUJEQUE-MAGANA, aka JORGE RICARDO GONGORA-CHI, | UNPUBLISHED OPINION |
| Appellant. | |
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | |
| LUCIANO MOLINA RIOS, | |
| Appellant. | |

MAXA, C.J. – In a consolidated case, Miguel Trujeque-Magana and Luciano Molina Rios appeal their convictions of multiple drug and firearm offenses. The convictions arose out of an investigative traffic stop during which officers found a large amount of heroin in a purse belonging to Trujeque-Magana's passenger, Juanna Santiago-Santos, and a subsequent search of an apartment leased to Trujeque-Magana and Molina Rios that revealed cocaine, methamphetamine, several handguns, and cash. The stop occurred after officers observed

Molina Rios and Trujeque-Magana engage in activities that they believed were consistent with trying to set up a drug purchase.

We hold that (1) the trial court erred in failing to enter written findings of fact and conclusions of law after denying a motion to suppress evidence obtained because of the investigative stop, but the error is harmless because the court gave a detailed oral ruling; (2) the trial court did not err in denying the suppression motion because officers had reasonable suspicion to conduct an investigative stop and Santiago-Santos consented to a search of her purse; (3) the State presented sufficient evidence to prove that both Trujeque-Magana and Molina Rios were accomplices to Santiago-Santos's possession; (4) the State presented sufficient evidence to prove that Trujeque-Magana constructively possessed the cocaine and firearms in the apartment; (5) the State presented sufficient evidence to prove that both Trujeque-Magana and Molina Rios each were armed with two firearms for purposes of sentencing enhancements for possession of cocaine and methamphetamine; (6) the trial court did not err in denying Trujeque-Magana's motion to dismiss based on the failure to disclose evidence because the evidence was not exculpatory; (7) the trial court did not err in ruling that the State was not required to disclose the identity of the confidential informant (CI) who assisted law enforcement; (8) the trial court did not abuse its discretion in admitting the officers' opinion testimony; (9) RCW 9.41.171(3) and RCW 9.41.175, the statutes governing the offense of alien in possession of a firearm, do not violate equal protection under the facts of this case; (10) the trial court did not err in ruling that several of Trujeque-Magana's convictions did not constitute the same criminal conduct; (11) the trial court did not err in applying the double penalty provisions of RCW 69.50.435(1); and (12) the criminal filing fee imposed on Molina Rios as a mandatory legal financial obligation (LFO) must be stricken.

Accordingly, we affirm Trujeque-Magana's and Molina Rios's convictions and sentences, but we remand for the trial court to strike the criminal filing fee imposed on Molina Rios and amend his judgment and sentence.

FACTS

*Surveillance of Molina Rios*

In October 2015, Oregon law enforcement received information from a CI that a person, later identified as Molina Rios, was selling drugs. Oregon officers, including Detective Joshua Zwick, Deputy Kevin Jones, and Deputy Matt Ferguson, and Vancouver officers, including Detective Shane Hall, began an investigation. Working with the CI, they conducted two controlled buys from Molina Rios at his apartment in Clark County. Trujeque-Magana initially was not involved in this investigation.

The CI later told officers that Molina Rios was going to the Seattle area to obtain drugs. On November 4, Jones and Ferguson followed a gray Scion that they recognized as Molina Rios's car to the Everett area. Jones and Ferguson were in separate vehicles. Molina Rios went to a train station parking lot and parked and re-parked in different spaces, but did not get out of his car. While he was there, a person walked up to the car and then left. Molina Rios then drove to a strip mall and parked. In the parking lot, Molina Rios met up with two people, later identified as Trujeque-Magana and Santiago-Santos, who were in a white Honda. They all went in to a restaurant.

When they left the restaurant, Molina Rios and Trujeque-Magana got into the same car and sat together for a long period of time. At first they were talking on their cell phones. Then they had their heads down toward the center console area. Although Jones could not see any money, he believed based on his training and experience that they were counting money. After

3

that, Molina Rios and Trujeque-Magana moved their cars so they were parked next to each other. They did not interact with anyone else in the parking lot. Santiago-Santos slept in the Honda during part of this time.

Next, Molina Rios and Trujeque-Magana left in tandem and drove to a store parking lot a few blocks away. They parked and met outside their cars and talked with each other, but did not meet with anyone else or go into the store.

Molina Rios and Trujeque-Magana then followed one another to a shopping mall, where they parked on opposite sides of the mall. They went into the mall together and stayed inside for a few hours before exiting together. They went to their separate cars, met in a central driveway, and exited the mall parking lot together. The officers lost track of them when both vehicles ran a red light and it was unsafe for the officers to follow.

People parking in parking lots, seemingly not doing anything, and moving to other parking lots was something that Ferguson had observed during drug investigations. A suspect might park to see if they are being followed and might be directed to different buy locations that change repeatedly to avoid being followed by police. Running red lights or other erratic driving also is a way that suspects attempt to avoid being followed.

Jones and Ferguson relayed their observations of Molina Rios and Trujeque-Magana to Zwick, who in turn discussed them with Hall.

*Investigative Stop and Search*

Jones and Ferguson next observed the two cars a few hours later travelling southbound on Interstate 5 in the Chehalis area. The two vehicles appeared to be driving in tandem, with the Scion in front and the Honda directly behind with no cars in between. The officers followed the

4

cars southbound on Interstate 5 back to Clark County. After receiving reports from Jones and Ferguson, Zwick and Hall decided to conduct a traffic stop of the vehicles.

Under Hall's direction, patrol cars stopped the two vehicles in Clark County for an investigative search. Trujeque-Magana and Santiago-Santos gave consent for the officers to search the Honda. Santiago-Santos took her purse with her when she got out of the car and placed it on the ground. Hall asked Santiago-Santos if he could search her purse and she consented. Hall found a large bag of heroin inside the purse.

*Apartment Search*

Hall obtained a search warrant for the apartment. Inside the apartment, officers found a document signed by Molina Rios, Trujeque-Magana, and a third person stating that they had leased the apartment. The lease term was from May 19, 2015 through April 30, 2016.

In one bedroom, officers found an identification card belonging to Molina Rios. In that bedroom were bags of methamphetamine and cocaine. Officers also found a handgun (9 mm Walther) under the pillow at the head of the bed and a semiautomatic pistol (.45 caliber Taurus) in a dresser drawer.

In another bedroom, officers found a bag on the floor of the closet that contained cocaine. They also found two handguns: a 9 mm Glock with a loaded magazine and a 9 mm Ruger. That bedroom also contained male clothing. One of the shirts in the bedroom was a blue and white, long sleeve plaid shirt. Detective Hall later found a photograph on Facebook in which Trujeque-Magana was wearing that shirt.

*Drug and Firearm Charges*

The State charged Trujeque-Magana with possession with intent to deliver heroin as both a principal and an accomplice (count 1), possession with intent to deliver cocaine while armed

with a firearm and within 1000 feet of a school bus route stop (count 4), two counts of first degree unlawful possession of a firearm (counts 6 and 7), and being an alien in possession of a firearm without an alien firearm license (count 8).

The State also charged Molina Rios with possession with intent to deliver heroin as both a principal and an accomplice (count 1), possession with intent to deliver methamphetamine while armed with a firearm and within 1,000 feet of a school bus route stop (count 2), possession with intent to deliver cocaine while armed with a firearm and within 1,000 feet of a bus stop (count 3), and being an alien in possession of a firearm without an alien firearm license (count 9).[1]

*Motion to Suppress Evidence*

Trujeque-Magana filed a motion to suppress all evidence obtained after the investigative stop on the basis that the police did not have reasonable suspicion to conduct the stop. He also argued that Santiago-Santos's consent to search her purse was invalid. He sought to suppress the heroin found in Santiago-Santos's purse and all evidence discovered in the search of the apartment.

The trial court held a CrR 3.6 hearing on Trujeque-Magana's suppression motion. The court concluded that the State had reasonable suspicion to conduct an investigative stop on both of the cars and that the State's search of Santiago-Santos's purse was lawful. As a result, the court denied Trujeque-Magana's motion to suppress. The court did not enter written findings of fact and conclusions of law. But the court's oral ruling included a detailed narrative of the facts regarding the officers' reasonable suspicion to conduct the investigative stop and probable cause.

---

[1] The State also charged Molina Rios with possession of a stolen firearm, but that charge eventually was dismissed.

6

*Motion to Identify CI*

Trujeque-Magana filed a pretrial motion seeking to compel the State to disclose the identity of the CI. He argued that because the CI had provided information regarding Molina Rios, the CI would be able testify as to whether Trujeque-Magana was involved in Molina Rios's drug business.

The trial court found that Trujeque-Magana had not shown that the CI had information that would bear on his innocence and ruled that the State was not required to disclose the CI's identity.

*Motion to Dismiss for* Brady *Violation*

During the trial, Trujeque-Magana filed a motion to dismiss based on a claim that the State had refused to provide potentially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). In the supporting declaration, defense counsel stated that he had learned that a shopping bag that Trujeque-Magana allegedly was carrying when he left the mall might be in the trunk of Trujeque-Magana's car in a police impound lot. He noted that the officers following Trujeque-Magana and Molina Rios had testified at the suppression hearing that the defendants had been in a shopping mall but were not carrying any shopping bags when they left. Defense counsel requested that the State retrieve the shopping bag, but the State had refused.

The trial court denied Trujeque-Magana's motion, stating that even if the State had the shopping bag and had known about the shopping bag, it was not material exculpatory evidence.

*Convictions and Sentences*

The jury found both defendants guilty of all counts. With regard to Trujeque-Magana's conviction of possession with intent to deliver cocaine and Molina Rios's convictions of

possession with intent to deliver cocaine and methamphetamine, the jury found by special verdicts that they each were armed with two handguns at the time of the commission of the crimes. The jury also found by special verdict that the possession of cocaine with intent to deliver by both defendants and the possession of methamphetamine with intent to deliver by Molina Rios occurred within 1,000 feet of a school bus stop.

The trial court found that Trujeque-Magana's convictions of two counts of first degree unlawful possession of a firearm and being an alien in possession of a firearm were the same criminal conduct. The court determined that Trujeque-Magana's convictions of possession of heroin and possession of cocaine were not the same criminal conduct and that the firearm enhancement for possession of cocaine was not the same criminal conduct as the two convictions of unlawful possession of a firearm.

Based on the school bus route stop special verdict, the trial court doubled the maximum term for Trujeque-Magana's possession of cocaine conviction to 20 years. This meant that under RCW 9.94A.533(3)(a), the sentence for each firearm enhancement was five years rather than three years.

The trial court sentenced Trujeque-Magana to 240 months of confinement, and Molina Rios to 332 months of confinement.

Trujeque-Magana and Molina Rios appeal their convictions and sentences.

ANALYSIS

A.    MOTION TO SUPPRESS EVIDENCE

Trujeque-Magana argues that the trial court erred in denying his motion to suppress the evidence obtained as the result of the investigative stop of his vehicle. He claims that (1) the trial court failed to enter written findings of fact and conclusions of law regarding its denial of

the suppression motion, (2) the evidence should have been suppressed because officers did not have reasonable suspicion to conduct the investigative stop, and (3) Santiago-Santos's consent to search her purse was invalid because the officers did not inform her of her right to refuse consent. We agree that the trial court erred in failing to enter written findings and conclusions but hold that the error was harmless. We reject the other two arguments.

### 1. Failure to Enter Written Findings and Conclusions

CrR 3.6(b) requires the trial court to enter written findings of fact and conclusions of law following a suppression hearing. Failure to enter written findings of fact and conclusions of law is error, but the error is harmless if the trial court's oral decision is sufficient to permit appellate review. *State v. Weller*, 185 Wn. App. 913, 923, 344 P.3d 695 (2015).

Here, the State concedes that the trial court erred by failing to enter written findings of fact and conclusions of law for its denial of the motion to suppress. However, we hold that the error is harmless. The record of the evidentiary hearing and the trial court's oral ruling is sufficiently comprehensive for us to adequately review Trujeque-Magana's claim.

### 2. Validity of Investigative Stop

Trujeque-Magana argues that the investigative stop of his vehicle was invalid because officers did not have reasonable suspicion to conduct the stop. We disagree.

#### a. Legal Principles

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, a law enforcement officer generally cannot seize a person without a warrant. *State v. Fuentes*, 183 Wn.2d 149, 157-58, 352 P.3d 152 (2015). If a seizure occurs without a warrant, the State has the burden of showing that it falls within one of the carefully drawn exceptions to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796

9

(2015). One established exception is a brief investigative detention of a person, known as a *Terry*[2] stop. *Id.*

For an investigative stop to be permissible, a police officer must have had a "reasonable suspicion" based on specific and articulable facts that the detained person was or was about to be involved in a crime. *Id.* A "generalized suspicion that the person detained is 'up to no good' " is not enough; "the facts must connect the particular person to the particular crime that the officer seeks to investigate." *Id.* at 618 (italics omitted).

We determine the propriety of an investigative stop – the reasonableness of the officer's suspicion – based on the "totality of the circumstances." *Fuentes*, 183 Wn.2d at 158. "The totality of circumstances includes the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, and the amount of physical intrusion on the suspect's liberty." *Id.* The focus is on what the officer knew at the inception of the stop. *Id.*

Significantly, an officer can rely on his or her experience to identify seemingly innocent facts as suspicious. *State v. Moreno*, 173 Wn. App. 479, 492, 294 P.3d 812 (2013). Facts that appear innocuous to an average person may appear suspicious to an officer in light of past experience. *Id.* at 493. And "officers do not need to rule out all possibilities of innocent behavior before they make a stop." *Fuentes*, 183 Wn.2d at 163.

In evaluating a denial of a motion to suppress evidence, we review the trial court's findings of fact for substantial evidence and review de novo the trial court's conclusions of law based on those findings. *Id.* at 157.

---

[2] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

b.    Analysis

The trial court concluded that the officers had reasonable suspicion necessary to conduct an investigative stop.  In its oral ruling, the court relied on the following facts: (1) the officers had recently conducted a controlled buy in which the CI purchased drugs from Molina Rios, (2) the officers received information from the CI that Molina Rios would be going to the Seattle area to obtain drugs, (3) the officers followed Molina Rios to the Everett area in a car associated with the controlled buy, (4) Molina Rios met up with Trujeque-Magana, (5) Trujeque-Magana had two prior convictions for drug distribution, (6) Molina Rios and Trujeque-Magana stopped in places where they did not do anything and spent a lot of time talking on their phones, (7) it appeared to the officers that Molina Rios and Trujeque-Magana were counting money, (8) Molina Rios and Trujeque-Magana engaged in what the officers perceived as a countermeasure to lose the officers, and (9) Molina Rios and Trujeque-Magana were driving in a way that suggested that they were driving in tandem and working together.

We conclude that substantial evidence supported the trial court's oral findings.  Jones and Ferguson testified to all of these facts.  And Trujeque-Magana does not challenge the court's findings.  The question here is whether these findings are sufficient to support the conclusion that the officers had a reasonable suspicion that Trujeque-Magana had been or was involved in a crime.

Trujeque-Magana argues that the officers had no basis for suspecting that he, as opposed to Molina Rios, was involved in criminal activity.  The CI identified only Molina Rios as being involved in drug activity.  Although Trujeque-Magana spent time with Molina Rios doing innocuous things, none of the surveillance showed Trujeque-Magana doing anything illegal.  Trujeque-Magana emphasizes that a stop is not justified merely because a person is in proximity

11

to someone who is suspected of criminal activity. *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010). He also argues that his prior criminal history by itself was not sufficient to stop him.

However, the undisputed evidence shows that Molina Rios went to the Everett area to obtain drugs, and that throughout the day Trujeque-Magana and Molina Rios were working closely together. They met, talked on their cell phones in Molina Rios's car, drove their cars together to a store parking lot and then to the mall, and drove in tandem back to Clark County. This evidence supports the conclusion that Trujeque-Magana was not merely in proximity to Molina Rios; he was actively assisting in Molina Rios's effort to obtain drugs.

Further, although the evidence showed activity that could have been innocuous, that activity also was consistent with setting up a meeting to purchase drugs and trying to avoid being followed by law enforcement. Molina Rios and Trujeque-Magana moved from place to place. They talked on their cell phones. The officers thought that they counted money. And Molina Rios and Trujeque-Magana took actions to evade law enforcement. Based on their extensive experience, Jones and Ferguson suspected that these seemingly innocuous activities were associated with a drug exchange.

Finally, Trujeque-Magana is correct that his criminal record standing alone would not have been sufficient to justify an investigative stop. But his two prior drug distribution convictions could be considered with all the other factors to support a reasonable suspicion of criminal activity. *See State v. Neth*, 165 Wn.2d 177, 185-86, 196 P.3d 658 (2008) (holding that a prior criminal history of similar crimes is not enough on its own, but with other evidence may meet the higher probable cause standard).

The totality of the circumstances were sufficient to establish a reasonable suspicion that Trujeque-Magana was engaged in illegal drug activity. Accordingly, we hold that the trial court

12

did not err in concluding that the investigative stop was justified and in denying Trujeque-Magana's suppression motion.

  3. Consent to Search Purse

  Trujeque-Magana argues that Santiago-Santos's consent to search her purse was invalid because the officers did not inform her of her right to refuse consent. We disagree.

  One of the recognized exceptions to the warrant requirement is lawful consent. *State v. Blockman*, 190 Wn.2d 651, 658, 416 P.3d 1194 (2018). The Supreme Court has set out three requirements for a valid consensual search: "(1) the consent must be voluntary, (2) the consent must be granted by a party having authority to consent, and (3) the search must be limited to the scope of the consent granted." *Id.*

  The trial court found that Santiago-Santos's consent to search her purse was voluntary. Trujeque-Magana does not challenge this finding. Instead, he argues that as a matter of law, the officers were required to inform her that she had the right to refuse consent to a search.

  When police are investigating a home using the "knock and talk" method, article 1, section 7 of the Washington Constitution requires the police to advise the homeowner of his or her right to refuse consent to a search. *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998); *see also State v. Budd*, 185 Wn.2d 566, 572-74, 374 P.3d 137 (2016). But the Washington constitution does not require *Ferrier* warnings for searches pursuant to a valid *Terry* stop. *State v. Witherrite*, 184 Wn. App. 859, 864, 339 P.3d 992 (2014); *State v. Tagas*, 121 Wn. App. 872, 876-78, 90 P.3d 1088 (2004). Like here, *Tagas* involved the search of a purse during a *Terry* stop on the side of a highway. 121 Wn. App. at 875. The court stated, "When the subject of the search is not in custody and the question is whether consent is voluntary,

knowledge of the right to refuse consent is not a prerequisite of voluntary consent." *Id.* at 876-77.

Trujeque-Magana acknowledges that courts have refused to require *Ferrier* warnings for searches outside of people's homes, but asks this court to extend the principles of *Ferrier* to searches pursuant to *Terry* stops. He refers to a concurring opinion in *Witherrite* that suggested that *Ferrier* should be extended to vehicle searches. 184 Wn. App. at 864-65 (Lawrence-Berrey, J., concurring). However, Trujeque-Magana does not provide any compelling reason to disregard existing precedent and to extend the scope of *Ferrier* when the Supreme Court has not chosen to do so. And even the concurring opinion in *Witherrite* was addressing searches of vehicles, not personal possessions.

We hold that the officers were not required to inform Santiago-Santos of her right to refuse to consent to a search of her purse. Accordingly, we hold that the trial court did not err in denying Trujeque-Magana's motion to suppress the heroin found in the purse.

B.       SUFFICIENCY OF EVIDENCE

Trujeque-Magana argues that the State did not present sufficient evidence to prove that (1) he possessed the heroin discovered in Santiago-Santos's purse (count 1), (2) he possessed the cocaine discovered in the apartment (count 4), (3) he possessed the two handguns found in the apartment (counts 6 and 7), and (4) he was armed with two handguns when he committed the crime of possession with intent to deliver cocaine. Molina Rios also asserts the first and fourth arguments.[3] We reject all of these arguments.

---

[3] Neither appellant argues that the evidence is insufficient on count 8, alien in possession of a firearm.

### 1.   Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id.* at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Id.* at 266. Circumstantial and direct evidence are equally reliable. *Id.*

### 2.   Possession of Drugs and Guns

Trujeque-Magana and Molina Rios argue that there was insufficient evidence to prove that they possessed the heroin in Santiago-Santos's purse, and Trujeque-Magana argues that there was insufficient evidence to prove that he possessed the cocaine and handguns in the apartment. We disagree.

### a.   Legal Principles – Possession

A person can have actual possession or constructive possession of an item. *State v. Reichert*, 158 Wn. App. 374, 390, 242 P.3d 44 (2010). Actual possession requires physical custody of the item. *Id.* Constructive possession occurs when a person has "dominion and control" over an item. *Id.* Dominion and control exists when the person can immediately convert the item to his or her actual possession. *Id.* A person can have possession without exclusive control; more than one person can be in possession of the same item. *State v. George*, 146 Wn. App. 906, 920, 193 P.3d 693 (2008). But possession involves actual control, not merely a momentary handling of the item. *Id.*

A person's dominion and control over a premises "creates a rebuttable presumption that the person has dominion and control over items on the premises." *Reichert*, 158 Wn. App. at 390. Therefore, a jury can infer constructive possession of items on the premises from a person's dominion and control over the premises. *See State v. Shumaker*, 142 Wn. App. 330, 334, 174 P.3d 1214 (2007). A vehicle is considered a "premises." *George*, 146 Wn. App. at 920.

        b.    Heroin in Purse

The State argues that Trujeque-Magana and Molina Rios had constructive possession of the heroin in Santiago-Santos's purse. Alternatively, the State argues that both Trujeque-Magana and Molina Rios were accomplices to Santiago-Santos's actual possession. We agree that under the specific facts of this case, both Trujeque-Magana and Molina Rios were accomplices to Santiago-Santos's possession.

Under RCW 9A.08.020(3)(a), a person can be guilty as an accomplice if:

[w]ith knowledge that it will promote or facilitate the commission of the crimes, he or she:
(i) Solicits, commands, encourages, or requests such other person to commit it; or
(ii) Aids or agrees to aid such other person in planning or committing it.

The to-convict jury instruction for count 1 stated that the jury had to find that Trujeque-Magana and Molina Rios *or their accomplice* possessed heroin.

Evidence that a person is merely present at the scene of a crime, even with knowledge of the crime, is insufficient to prove accomplice liability. *State v. Jameison*, 4 Wn. App. 2d 184, 205, 421 P.3d 463 (2018). The accomplice must "associate himself with the principal's criminal undertaking, participate in it as something he desires to bring about, and seek by his action to make it succeed." *Id.*

Here, the evidence supports a finding of accomplice liability. A reasonable inference from the evidence is that Trujeque-Magana and Molina Rios obtained the heroin, and gave it to

Santiago-Santos to transport back to Clark County. All three were involved in the criminal undertaking – possession of the heroin with intent to deliver it. In particular, the State presented evidence that Molina Rios and Trujeque-Magana were possibly counting money together and driving in tandem. Further, there was no evidence that Santiago-Santos was actively involved in any of these efforts. She was asleep while Molina Rios and Trujeque-Magana apparently were making calls and counting money.

This evidence supports an inference that both Trujeque-Magana and Molina Rios had helped obtain the heroin found in Santiago-Santos's purse and therefore knew about it, and were aiding her in transporting it to Clark County.

Molina Rios argues that the State failed to prove that he was an accomplice because there was no *direct* evidence that he knew the heroin was in Santiago-Santos's purse. However, in a sufficiency challenge we view circumstantial evidence and direct evidence as equally reliable. *Cardenas-Flores*, 189 Wn.2d at 266. Here, the circumstantial evidence supports a reasonable inference that Molina Rios was aware of and actively aided in Santiago-Santos's possession of the heroin.

We hold that sufficient evidence supports Trujeque-Magana's and Molina Rios's convictions of possession with intent to deliver heroin.

c. Drugs and Guns in Apartment

The issue here is whether Trujeque-Magana had dominion and control over the bedroom in the apartment where officers found cocaine and two handguns, which would invoke the presumption that he constructively possessed those items. Trujeque-Magana emphasizes that the State presented no direct evidence that he had any connection with the apartment at the time the cocaine and guns were discovered.

17

However, the State presented a document signed by Trujeque-Magana showing that he had leased the apartment. Although this evidence does not conclusively prove that he lived there, it supports a reasonable inference that Trujeque-Magana had some control over the apartment. In addition, the bedroom in which the cocaine and guns were found contained men's clothes, including a shirt that Trujeque-Magana was seen wearing in a Facebook photograph. This evidence, along with the lease document, supports a reasonable inference that he was living in that bedroom and had dominion and control of at least that bedroom. Therefore, the evidence supports the conclusion that Trujeque-Magana had constructive possession of the cocaine and guns in the bedroom.

Accordingly, we hold that sufficient evidence supports Trujeque-Magana's convictions of possession with intent to deliver cocaine and unlawful possession of the two firearms.

3. Armed with Firearms

Trujeque-Magana and Molina Rios argue that there was insufficient evidence to prove that they were armed with the handguns found in the apartment when they committed the possession of cocaine (Trujeque-Magana) and cocaine/methamphetamine (Molina Rios) crimes. We disagree.

a. Legal Principles

Under RCW 9.94A.533(3), a court must add additional time to a sentence if the defendant is found to have been armed with a firearm while committing the crime. *State v. Houston-Sconiers*, 188 Wn.2d 1, 16-17, 391 P.3d 409 (2017). The additional time is five years for a class A felony or a felony with a statutory maximum sentence of at least 20 years, and three years for a class B felony or a felony with a statutory maximum sentence of at least 10 years. RCW 9.94A.533(3)(a)(b).

18

"To establish that a defendant was armed for the purpose of a firearm enhancement, the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 826, 425 P.3d 807 (2018).

Regarding the first requirement, the presence or even constructive possession of a weapon found at a crime scene alone is not enough to establish that the defendant was armed in this context. *Id.* at 824. On the other hand, "[t]he defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." *State v. O'Neal*, 159 Wn.2d 500, 504, 150 P.3d 1121 (2007). "[T]he State need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible so long as it was at the time of the crime." *Id.* at 504-05. The court in *Sassen Van Elsloo* confirmed these principles. 191 Wn.2d at 826-27. And a drug distribution operation is a continuing crime that is ongoing even when the defendant is elsewhere. *See State v. Neff*, 163 Wn.2d 453, 464-65, 181 P.3d 819 (2008) (stating this principle in the context of a drug manufacturing operation).

Regarding the second requirement, we look to the nature of the crime, the type of firearm, and the context in which it was found to determine if there was a nexus between the defendant, the firearm, and the crime. *Sassen Van Elsloo*, 191 Wn.2d at 827. Significantly, a sufficient nexus exists if there is evidence that the firearm was present to protect an ongoing drug operation. *O'Neal*, 159 Wn.2d at 506; *State v. Eckenrode*, 159 Wn.2d 488, 494-95, 150 P.3d 1116 (2007).

The Supreme Court has considered whether the State presented sufficient evidence to support a firearm enhancement for drug crimes in several cases. In *Sassen Van Elsloo*, the

defendant had a loaded shotgun in a car that also contained various types of drugs. 191 Wn.2d at 802-03. The court held that the State had presented sufficient evidence that the shotgun was readily accessible and connected to the possession of the drugs. *Id.* at 829-31.

In *Neff*, police found two loaded guns in a locked safe and a loaded gun in a tool belt hanging from the rafters of a garage where methamphetamine was being manufactured. 163 Wn.2d at 457. Police also discovered two surveillance cameras and a monitor in the garage. *Id.* The court held that the evidence was sufficient to prove that the defendant was armed with a firearm. *Id.* at 464-65. The court noted that the mere presence and constructive possession of a gun was not sufficient to support the enhancement without evidence linking the gun to the crime, but stated that the presence of the security cameras and monitor provided that proof. *Id.* at 464. And the court rejected the defendant's argument that he could not be armed with the guns because he was not in the garage at the time of the arrest, emphasizing that the drug operation was a continuing crime. *Id.* at 464-65.

In *O'Neal*, police found more than 20 guns along with body armor, a police scanner, and night goggles at a mobile home where methamphetamine was being manufactured. 159 Wn.2d at 503. The defendants were arrested at the time of the search, but they were not holding guns when arrested. *Id.* at 502. Most of the guns were in two safes; however, a loaded semiautomatic rifle and a loaded semiautomatic pistol were found in two bedrooms. *Id.* at 503. The court held that the two loaded weapons were readily accessible and that a reasonable jury could infer that the guns were there to protect the drug operation. *Id.* at 506. The court cited with approval this court's decision in *State v. Simonson*, 91 Wn. App. 874, 883, 960 P.2d 955 (1998), which held that it was reasonable to infer that the presence of at least four loaded guns at a

methamphetamine manufacturing operation was for the purpose of defending the operation and therefore was sufficient to support a deadly weapon enhancement. *O'Neal*, 159 Wn.2d at 505.

In *Eckenrode*, law enforcement searching a house discovered a large marijuana grow operation and a loaded rifle and an unloaded pistol along with a police scanner. 159 Wn.2d at 491-92, 494. The defendant was outside and far away from the guns when he was arrested. *Id.* at 492. The court stated that the legislative purpose of the deadly weapons enhancement was "to recognize that armed crime, including having weapons available to protect contraband, imposes particular risks of danger on society." *Id.* at 493. The court held that based on the evidence of a drug manufacturing operation, a police scanner to monitor police activity and the weapons, "[a] jury could readily have found that the weapons were there to protect the criminal enterprise." *Id.* at 494.

The court reached the opposite conclusion in *State v Gurske*, where the defendant had a pistol in a zipped backpack stuffed behind the driver's seat of his truck. 155 Wn.2d 134, 136, 118 P.3d 333 (2005). The court held that the stipulated facts were insufficient to prove that the pistol was readily accessible for the purpose of the firearms enhancement. *Id.* at 143-44. The court stated that the evidence was insufficient because the facts did not indicate whether the defendant could have reached the backpack, unzipped it, removed items on top of the pistol, and accessed the pistol from where he was sitting when he was stopped by a police officer. *Id.*

The court in *State v. Valdobinos* also found insufficient evidence to support a firearm enhancement where an unloaded rifle was found under a bed in a house where cocaine was discovered. 122 Wn.2d 270, 274, 282, 858 P.2d 199 (1993). The court held that there was no evidence showing that the unloaded rifle was accessible and readily available for offensive or defensive use. *Id.* at 282.

21

b.    Analysis

Here, the State presented evidence that loaded guns were found in a closet very close to a bag of cocaine (Trujeque-Magana) and under a pillow and in a dresser drawer in a room with large amounts of drugs (Molina Rios).  A reasonable jury could conclude that these guns were readily accessible and available to people in the apartment.  Under *O'Neal*, the State was not required to show that Trujeque-Magana and Molina Rios were armed at the time of their arrests or establish with mathematical certainty the specific time and place that the guns were accessible and available regarding their continuing possession with intent to deliver offenses.  159 Wn.2d at 504-05.  And a reasonable jury could infer from the proximity of the guns to the drugs that the guns were used to protect the ongoing drug operation.

*Gurske* does not apply here because in that case, the firearm clearly was not accessible to the driver of a vehicle.  155 Wn.2d at 143.  Here, the guns were easily accessible to anyone who was near the seized drugs.  *Valdobinos* does not apply here because in that case, the firearm was unloaded and the court did not indicate that it was near the cocaine that officers discovered.  122 Wn.2d at 282.  Here, the guns were loaded and were in close proximity to the seized drugs.

Trujeque-Magana argues that the firearms could not have been readily accessible because he was in custody at the time the guns were discovered.  He cites this court's decision in *State v. Mills*, which held that the defendant was not armed with a firearm when he was arrested several miles from a hotel room where the firearm and drugs were found.  80 Wn. App. 231, 234-37, 907 P.2d 316 (1995).

However, Trujeque-Magana's possession with intent to deliver the drugs in the apartment was a continuing offense.  In *Simonson*, one of the defendants was in jail when officers discovered drugs and firearms in his trailer.  91 Wn. App. at 877-78.  This court held that the

22

evidence was sufficient to support a deadly weapon enhancement. *Id.* at 883. The court stated that the defendants were committing a continuing offense over a six-week period, and during some or all of that time they kept guns on the premises that could be inferred were used to defend their drug operation. *Id. Simonson*, not *Mills*, is applicable here.

Further, *Mills* was decided long before the series of cases discussed above that further explained the evidence required to prove that a defendant was armed with a firearm. These cases have established that RCW 9.94A.533(3) requires that the defendant was armed during the commission of the offense, but does not require that the defendant be armed at the time the guns were discovered or at the time he or she was arrested. *O'Neal*, 159 Wn.2d at 504.

In addition, the information stated that Trujeque-Magana committed the intent to deliver cocaine offense "on or about" November 5, 2015. When an offense is charged using "on or about" or similar language, the proof that the offense was committed is not limited to the specified date. *State v. Yallup*, 3 Wn. App. 2d 546, 553, 416 P.3d 1250, *review denied* 191 Wn.2d 1014 (2018). Therefore, the State was not required to prove that Trujeque-Magana was armed with a firearm specifically on November 5.

Molina Rios argues that the State did not present evidence of a nexus between himself, the guns, and his constructive possession of the drugs. However, the State presented evidence that a loaded handgun was under the pillow in Molina Rios's bedroom. The State also presented evidence of drugs in Molina Rios's bedroom. A jury reasonably could have inferred that Molina Rios had the gun nearby to defend the drugs in his room.

Accordingly, we hold that sufficient evidence supports the firearm enhancements for both Trujeque-Magana and Molina Rios.

C.    DISCLOSURE OF EXCULPATORY EVIDENCE

Trujeque-Magana argues that the trial court erred in denying his motion to dismiss based on his claim that the State failed to produce exculpatory evidence – a shopping bag in the car he was driving – in violation of the *Brady* rule.  We disagree.

1.    Legal Principles

Under *Brady* and its progeny, the State is required to turn over all potentially exculpatory evidence or evidence that could be used as impeachment evidence.  *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011).  "The state due process clause extends the same protection regarding this right as does its federal counterpart."  *State v. Armstrong*, 188 Wn.2d 333, 344, 394 P.3d 373 (2017).

The defendant bears the burden of proving three elements of a successful *Brady* claim: (1) the evidence must be favorable to the defendant, either as exculpatory or impeachment evidence; (2) the State must have withheld the evidence; and (3) the evidence must be material to the defense.  *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

Evidence is material if there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defendant.  *Id.* at 73.  A defendant need not demonstrate that he would be acquitted if suppressed evidence had been disclosed.  *Id.*  Under the reasonable probability standard, the defendant must show only that the State's suppression undermines confidence in the trial's outcome.  *Id.*  We evaluate the effect of the State's failure to disclose favorable evidence cumulatively and in the context of the entire record.  *Id.* at 78.

Our review of *Brady* claims involves a mixed question of fact and law.  *Id.* at 74.  We review underlying factual findings by the trial court for substantial evidence.  *Id.* at 74-75.  But

we review de novo the ultimate constitutional question of whether the State's failure to disclose certain information resulted in a due process violation. *Id.* at 75.

2.    Analysis

Trujeque-Magana argues that the shopping bag in the car he was driving was material because it could have been used to impeach the officers' testimony suggesting that he was doing nothing while under surveillance. However, he admits that the officers did not testify about a lack of a shopping bag in their trial testimony (as they did in the suppression hearing). Therefore, it is unclear how the presence of the shopping bag in the impounded car would undermine their credibility.

In addition, the officers' testimony that doing nothing suggested involvement in a drug transaction was an issue at the suppression hearing, not at trial. So impeachment on this issue would be immaterial. And even if he did buy something at the mall, Trujeque-Magana does not explain how the shopping bag would prove that he was not involved with a drug transaction.

Accordingly, we hold that the potential shopping bag is not material evidence and therefore that the State's failure to produce it to Trujeque-Magana was not a *Brady* violation.

D.    IDENTIFICATION OF CI

Trujeque-Magana argues that the trial court erred in refusing to require the State to disclose the identity of the CI involved in the investigation of Molina Rios. We disagree.

1.    Legal Principles

Under the so-called "informer's privilege," the State generally is not required to disclose the identity of a CI, in order to encourage citizens to safely provide information on criminal activity to law enforcement. *State v. Atchley*, 142 Wn. App. 147, 155, 173 P.3d 323 (2007). CrR 4.7(f)(2) provides that the State is not required to reveal the identity of a CI if "a failure to

disclose will not infringe upon the constitutional rights of the defendant." The trial court must weigh the possible significance of the informant's testimony and the possible defenses against the State's interest in protecting the identity of its informant. *Atchley*, 142 Wn. App. at 155-56. "When 'disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.' " *State v. Petrina*, 73 Wn. App. 779, 783, 871 P.2d 637 (1994) (quoting *Rovario v. U.S.*, 353 U.S. 53, 60-61, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957)).

We review a trial court's decision on a request to disclose the CI's identity for an abuse of discretion. *State v. Bauer*, 98 Wn. App. 870, 878, 991 P.2d 668 (2000). A court abuses its discretion when it acts on untenable grounds or its decision is manifestly unreasonable. *Id.*

2.    Analysis

Trujeque-Magana argued in his motion to the trial court that the CI would be able to testify that Trujeque-Magana was not involved in the drug operation because only Molina Rios had participated in the controlled buy with the CI. The trial court ruled that even if the CI could testify that Trujeque-Magana was not involved in the controlled buys, such testimony would not be material to Trujeque-Magana's involvement in the alleged drug transaction in Everett, the traffic stop, or the evidence found in the apartment.

Trujeque-Magana now argues that evidence that Molina Rios was acting alone during the controlled buys could have rebutted the circumstantial evidence that Trujeque-Magana was involved in the drug operation. However, he does not explain how the CI's testimony regarding the controlled buys would show that Molina Rios was operating his drug business alone or that Trujeque-Magana did not participate on another date. Trujeque-Magana has not shown that the trial court's ruling was untenable or unreasonable.

26

Accordingly, we hold that the trial court did not abuse its discretion in denying Trujeque-Magana's motion to disclose the identity of the CI.

E.       OPINION TESTIMONY OF OFFICERS

Trujeque-Magana argues that the trial court erred in allowing officers to provide opinion testimony regarding various observations.  He argues that the officers' testimony improperly stated opinions on issues of fact to be determined by the jury.  We disagree.

1.    Legal Principles

We review a trial court's decision to admit evidence for an abuse of discretion.  *State v. Quaale*, 182 Wn.2d 191, 196, 340 P.3d 213 (2014).  A trial court has considerable discretion in determining the admissibility of evidence.  *Id.*  An abuse of discretion occurs only where a trial court's decision is manifestly unreasonable or based on untenable grounds or reasons.  *Id.* at 197.  There is no abuse of discretion if reasonable persons could disagree regarding admissibility of evidence.  *Id.* at 196.

Under ER 701, a witness not testifying as an expert can offer opinions that are (1) rationally based on the witness's perceptions, (2) helpful to the trier of fact in understanding the witness's testimony or determining a fact in issue, and (3) not based on scientific, technical, or other specialized knowledge covered by ER 702.  *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008).

However, witnesses may not give opinions on personal beliefs of the defendant's guilt, the intent of the accused, or the veracity of another witness.  *Quaale*, 182 Wn.2d at 200.  Such opinion testimony is unfairly prejudicial to the defendant because determining the defendant's guilt is the jury's exclusive province.  *State v. King*, 167 Wn.2d 324, 331, 219 P.3d 642 (2009).  "A law enforcement officer's improper opinion testimony may be particularly prejudicial

because it carries 'a special aura of reliability.' " *State v. Winborne*, 4 Wn. App. 2d 147, 177, 420 P.3d 707 (2018) (quoting *King*, 167 Wn.2d at 331). The inclusion of opinion testimony regarding a defendant's guilt may be reversible error. *King*, 167 Wn.2d at 329-30.

While a witness may not give testimony on their personal beliefs regarding the evidence, a witness may testify that certain evidence is "consistent with" a particular conclusion. *Montgomery*, 163 Wn.2d at 592-93.

2. Analysis

Trujeque-Magana challenges the admissibility of four areas of testimony. First, Deputy Jones testified that he believed that Trujeque-Magana and Molina Rios were counting money even though he could not see their hands and could not see any money. Jones also testified that many times as a drug investigator he had observed suspects spend long periods of time doing nothing.

Similarly, Detective Ferguson testified that he believed that Trujeque-Magana and Molina Rios could have been counting money. In addition, Ferguson testified that based on his experience, Trujeque-Magana and Molina Rios were preparing to conduct a drug deal or secret the drug deal from police; that Trujeque-Magana and Molina Rios were engaged in counter surveillance driving; and that in his experience people would move the location multiple times when they are trying to conduct a drug deal.

However, this testimony involved the officers' opinions based on their observations and their experience. These type of opinions generally are admissible under ER 701. And the officers did not express any opinions regarding Trujeque-Magana's guilt.

Second, Detective Hall testified about the presence of makeup, brushes, and a Victoria's Secret bag in the room officers associated with Trujeque-Magana. He stated that suspects and

witnesses had told him that drugs belonged to them even though they were contained in materials generally attributed to the opposite gender. Once again, this testimony involved Hall's observations and experience and were admissible under ER 701.

Third, Detective Hall testified that the amount of cash officers discovered in the apartment was more cash than typically seen in drug cases, and that the cash showed that "[t]hey are at least middle, most likely upper-level drug dealers." Report of Proceedings (RP) at 966. Hall also testified that based on the three types of drugs present and the firearms that were found, "I say definitely this is signature of a middle to upper-level drug dealing organization." RP at 966. However, Trujeque-Magana did not object to this testimony at trial. Therefore, he cannot raise this issue for the first time on appeal. RAP 2.5(a); *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015).

Fourth, Trujeque-Magana asserts that officers testified that they did not perform DNA or fingerprint testing because they already had enough evidence to prove the defendants' guilt. However, defense counsel elicited this testimony on cross-examination and did not object to or move to strike their answers. Therefore, Trujeque-Magana cannot raise this issue for the first time on appeal. RAP 2.5(a); *Kalebaugh*, 183 Wn.2d at 583.

Accordingly, we reject Trujeque-Magana's claim that officers provided improper opinion testimony.

F.      EQUAL PROTECTION CHALLENGE TO RCW 9.41.171

Trujeque-Magana and Molina Rios argue that RCW 9.41.171(3) and RCW 9.41.175 violate equal protection because the statutes treat noncitizens from Canada differently than noncitizens from other countries regarding the possession of firearms. We disagree.

29

1.    Statutory Provisions

Under RCW 9.41.171, it is unlawful "for any person who is not a citizen of the United States to carry or possess any firearm, unless the person: (1) Is a lawful permanent resident; (2) has obtained a valid alien firearm license pursuant to RCW 9.41.173; or (3) meets the requirements of RCW 9.41.175." In other words, it is unlawful for a noncitizen to carry or possess a firearm unless one of three exceptions applies. The State concedes that in order to convict for violation of this statute, it has the burden of proving the absence of these three exceptions.

The State presented evidence that Trujeque-Magana and Molina Rios did not satisfy RCW 9.41.171(1) or (2). Trujeque-Magana stipulated that he was not a United States citizen and was not a lawful permanent resident.[4] And the State presented evidence that Molina Rios was not a United States citizen and was not a lawful permanent resident. The State also presented evidence that there was no record of either Trujeque-Magana or Molina Rios having a license to possess a firearm.

Trujeque-Magana and Molina Rios challenge RCW 9.41.171(3), which provides an exception for a person that meets the requirements of RCW 9.41.175. As Trujeque-Magana and Molina Rios note, RCW 9.41.175 distinguishes between nonimmigrant aliens and citizens of Canada in addressing when a noncitizen can carry or possess a firearm without obtaining a firearm license. RCW 9.41.175(1) states that a nonimmigrant alien who is not a Washington resident or Canadian citizen must possess:

---

[4] Trujeque-Magana claims that the court erred in instructing the jury that it could consider his stipulation that he was not a lawful permanent resident of the United States regarding counts 6 and 7. However, he does not assign error to this instruction and does not provide any meaningful argument regarding the alleged error. Therefore, we do not address this issue.

30

(a) A valid passport and visa showing he or she is in the country legally;

(b) If required under federal law, an approved United States department of justice ATF-6 NIA application and permit for temporary importation of firearms and ammunition by nonimmigrant aliens; and

(c)(i) A valid hunting license issued by a state or territory of the United States; or (ii) An invitation to participate in a trade show or sport shooting event being conducted in this state, another state, or another country that is contiguous with this state.

For Canadian citizens, the requirements are identical except for subsection (a). The statute does not specify that Canadian citizens must have passports and visas, but states that Canadian citizens must possess "[v]alid documentation as required for entry into the United States." RCW 9.41.175(2)(a).

Under these provisions, citizens of all countries other than Canada must have a visa showing that they are in the United States legally plus meet the requirements of (b) and (c) to lawfully carry or possess a firearm. But Canadian citizens who meet the (b) and (c) requirements do not need to have a visa or prove that they are in the United States legally to lawfully carry or possess a firearm; they only need a passport as valid documentation as required for entry.

      2.    Legal Principles – Equal Protection

The Fourteenth Amendment to the United States Constitution and article I, section 12 of the Washington Constitution guarantee equal protection under the law. "Equal protection requires that similarly situated individuals receive similar treatment under the law." *Harris v. Charles*, 171 Wn.2d 455, 462, 256 P.3d 328 (2011). Equal protection is a constitutional issue, which we review de novo. *Madison v. State*, 161 Wn.2d 85, 92, 163 P.3d 757 (2007).

The threshold requirement of an equal protection challenge is that a defendant "must establish that he received disparate treatment because of membership in a class of similarly

situated individuals and that the disparate treatment was the result of intentional or purposeful discrimination." *State v. Osman*, 157 Wn.2d 474, 484, 139 P.3d 334 (2006).

Trujeque-Magana and Molina Rios appear to be making a facial rather than an as applied challenge to RCW 9.41.171(3) and RCW 9.41.175. To prevail in a facial challenge, a defendant must show that " 'no set of circumstances exists in which the statute, as currently written, can be constitutionally applied.' " *City of Seattle v. Evans*, 184 Wn.2d 856, 862, 366 P.3d 906 (2015) (quoting *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004)).

3. Analysis

Trujeque-Magana and Molina Rios are correct that RCW 9.41.175 establishes different treatment for Canadian citizens on its face. However, they cannot show that there are no circumstances under which the statutes can be constitutionally applied. In fact, as applied to them under the facts of this case, RCW 9.41.171(3) and RCW 9.41.175 do not violate equal protection because Trujeque-Magana and Molina Rios would have been in violation of RCW 9.41.171(3) even if they were Canadian.

Trujeque-Magana and Molina Rios have not shown or even alleged that they had valid documentation for entry into the United States as required in RCW 9.41.175(2)(a) or that they had a hunting license from another state or an invitation to a trade show or event as required in RCW 9.41.175(2)(c). Therefore, RCW 9.41.171(3) and RCW 9.41.175 treated them the same regardless of whether they were Mexican or Canadian citizens.

We hold that RCW 9.41.171(3) and RCW 9.41.175 do not violate equal protection under the facts of this case.[5]

---

[5] Trujeque-Magana also claims in an assignment of error that the evidence was insufficient to support this conviction. However, he does not present any argument to support this claim, and therefore we do not address it. *State v. Mason*, 170 Wn. App. 375, 384, 285 P.3d 154 (2012).

G.    SENTENCING ISSUES

Trujeque-Magana argues that in sentencing him, the trial court made erroneous same criminal conduct rulings and applied five-year instead of three-year firearm enhancements based on a misinterpretation of RCW 69.50.435(1). We disagree.

1.    Same Criminal Conduct

For purposes of calculating a defendant's offender score, multiple offenses that encompass the same criminal conduct are counted as one offense. RCW 9.94A.525(5)(a)[6]. Under RCW 9.94A.589(1)(a), two or more offenses constitute the "same criminal conduct" when they "require the same criminal intent, are committed at the same time and place, and involve the same victim." If any of these elements is not present, the offenses are not the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

Multiple offenses will be treated as occurring at the same time if they are "part of a continuous, uninterrupted sequence of conduct over a very short period of time." *State v. Porter*, 133 Wn.2d 177, 183, 942 P.2d 974 (1997). On the other hand, multiple offenses do not occur at the same time if the defendant fails to show that they were continuous, simultaneous, or occurred in a short time frame. *Aldana Graciano*, 176 Wn.2d at 541.

The defendant bears the burden of establishing that two or more offenses encompass the same criminal conduct. *Id.* at 539-40. "[E]ach of a defendant's convictions counts toward his offender score *unless* he convinces the court that they involved the same criminal intent, time, place, and victim." *Id.* at 540.

---

[6] RCW 9.94A.525 was amended in 2017. However, these amendments do not materially affect the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 9.94A.525.

We review a trial court's determination of whether two offenses encompass the same criminal conduct for an "abuse of discretion or misapplication of law." *Id*. at 537. Under this standard, a trial court abuses its discretion if the record supports only the opposite conclusion. *Id*. at 537-38. "But where the record adequately supports either conclusion, the matter lies in the court's discretion." *Id.* at 538. In addition, a trial court abuses its discretion by applying the wrong legal standard. *State v. Johnson*, 180 Wn. App. 92, 100, 320 P.3d 197 (2014).

Here, the trial court ruled that Trujeque-Magana's convictions on counts 1 and 4 – the possession of heroin and cocaine convictions – were not the same criminal conduct. The court also ruled that counts 6, 7, and 8 – the possession of firearm convictions – were the same criminal conduct. However, the court did not find that counts 6, 7, and 8 were the same criminal conduct as the firearm enhancement associated with count 4.

Trujeque-Magana argues that counts 1 and 4 should constitute the same criminal conduct. He claims that although the two drug violations occurred at different times and at different places, his intent was the same and they occurred over a short time frame. However, by Trujeque-Magana's own admission, counts 1 and 4 took place at different times and places. Under RCW 9.94A.589(1)(a), the crimes must have been committed at the same time and place to constitute the same criminal conduct. Therefore, Trujeque-Magana's argument fails.

Trujeque-Magana also argues that counts 6, 7, and 8 were the same criminal conduct as the firearm enhancement associated with count 4. He claims that being armed for the purpose of the firearm enhancement was intimately tied to possessing the guns, and therefore should have been considered the same criminal conduct.

However, the criminal intent element of the firearm enhancement for possession with intent to distribute cocaine is different than for first degree unlawful possession of a firearm or

34

for alien in possession of a firearm. *State v. McGrew*, 156 Wn. App. 546, 555, 234 P.3d 268 (2010). For the possession with intent to deliver cocaine and firearm enhancement charge, the State was required to prove Trujeque-Magana intended to deliver the cocaine while armed with a firearm. *Id.* But for the unlawful firearm possession charges and the alien in possession of a firearm charge, the State was required to prove only that Trujeque-Magana knowingly possessed the firearms. *See McGrew*, 156 Wn. App. at 555. As noted above, to constitute the same criminal conduct two offenses must have the same criminal intent. *Aldana Graciano*, 176 Wn.2d at 540. Therefore, this argument also fails.

Accordingly, we hold that the trial court did not abuse its discretion in ruling that Trujeque-Magana's convictions on counts 1 and 4 were not the same criminal conduct and that his convictions on counts 6, 7, and 8 and the firearm enhancement associated with count 4 were not the same criminal conduct.

2. Effect of RCW 69.50.435(1) on Firearm Enhancement

Under RCW 69.50.435(1), a sentencing court may impose "imprisonment of up to twice the imprisonment otherwise authorized by this chapter" for a violation of RCW 69.50.401 involving possession with the intent to deliver a controlled substance if the defendant committed the offense within 1,000 feet of a school bus route stop or 1,000 feet of school grounds. RCW 69.50.401(2)(a) states that violations of that section for schedule I or II narcotics are punishable by up to 10 years imprisonment. Former RCW 69.50.101(dd)(5) (2015) states that cocaine is a narcotic drug, and cocaine is listed as a schedule II controlled substance under RCW 69.50.206(b)(4).

Here, the jury found that Trujeque-Magana had committed possession with intent to distribute cocaine within 1,000 feet of a school bus stop. The trial court therefore concluded that

35

the maximum term for count 4 was 20 years. The significance of this ruling was that under RCW 9.94A.533(3)(a), the sentence for each firearm enhancement was five years rather than three years.

Trujeque-Magana argues that the trial court should have applied the enhancement by doubling the *standard range* sentence listed in RCW 9.94A.517-.518 rather than to the statutory maximum sentence under RCW 69.50.401(2)(a). But RCW 69.50.435(1) specifically references "imprisonment otherwise authorized *by this chapter*." (Emphasis added.) The term of imprisonment listed in chapter 69.50 RCW that can be doubled is the statutory maximum listed in RCW 69.50.401(2)(a) – 10 years imprisonment.

This court held that under RCW 69.50.435(1), the maximum sentence is doubled to create a new maximum sentence for purposes of calculating the firearm sentencing enhancement. *State v. Blade*, 126 Wn. App. 174, 179-80, 107 P.3d 775 (2005). While addressing a different statute, the Supreme Court cited *Blade* with approval and confirmed that RCW 69.50.435(1) has the effect of doubling the maximum sentence, not the standard range sentence. *In re Pers. Restraint of Cruz*, 157 Wn.2d 83, 89-90, 134 P.3d 1166 (2006).

Accordingly, we hold that the trial court did not exceed its authority under RCW 69.50.435(1) in sentencing Trujeque-Magana.

3.  Criminal Filing Fee

Molina Rios argues in a supplemental brief that under *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), we should vacate the criminal filing fee imposed on him as part of his sentence because he is indigent. The State did not respond to this argument.

The trial court imposed as a mandatory LFO a $200 criminal filing fee. In 2018, the legislature amended RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing

fee on an indigent defendant. The Supreme Court in *Ramirez* held that this amendment applies prospectively to cases pending on direct appeal. 191 Wn.2d at 747-50.

Here, the trial court found that Molina Rios was indigent at the time of sentencing. Therefore, under the current version of RCW 36.18.020(2)(h) the criminal filing fee imposed on Molina Rios must be stricken.

H. APPELLATE COSTS

Molina Rios requests that we decline to impose appellate costs because he is indigent. The State has represented that it would not seek costs if it prevails. Therefore, we accept the State's representation and deny the award of costs against Molina Rios.

## CONCLUSION

We affirm Trujeque-Magana's and Molina Rios's convictions and sentences, but we remand for the trial court to strike the criminal filing fee imposed on Molina Rios and amend his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

LEE, J.

SUTTON, J.

37