IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31756-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOAN P. WITHERRITE, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Joan Witherrite challenges her three convictions for violating the Uniform Controlled Substances Act, chapter 69.50 RCW, arguing that she did not properly consent to the search of her car because an automobile should be treated in the same manner as a home. The trial court concluded that she gave informed consent to the search. As the record supports that determination and our case law does not support her request for stronger consent warnings, we affirm.

FACTS

A deputy sheriff stopped Ms. Witherrite for a traffic violation and had her perform field sobriety tests. The deputy then received permission to search Ms. Witherrite's car after advising her that at any time she could stop or limit the scope of the search. The deputy did not tell her that she had the right to refuse consent.

The vehicle search turned up marijuana, methamphetamine, and drug paraphernalia. The prosecutor ultimately charged the associated crimes for each of those items. She moved to suppress the evidence, arguing that her consent was invalid due to the absence of the warnings required by *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998). The trial court disagreed, concluding that *Ferrier* did not extend to vehicles and that Ms. Witherrite had consented to the search.

Ms. Witherrite then submitted to a stipulated facts trial. The court found her guilty as charged and imposed standard range sentence terms. Ms. Witherrite then timely appealed to this court.

## ANALYSIS

The sole issue[1] presented by this appeal is Ms. Witherrite's contention that her consent to the search was invalid because it was not the heightened standard required by *Ferrier*. She asks us to extend *Ferrier* to vehicle searches. Since the Washington Supreme Court has expressly declined to extend *Ferrier* outside of the "knock and talk" fact pattern and has distinguished vehicles from homes in prior search cases, and we have rejected that argument in a factually similar circumstance, we decline her invitation.

---

[1] Appellant does not present any argument that the trial court erred under the traditional totality of the circumstances test that applies to most consent cases. *E.g.*, *State v. Shoemaker*, 85 Wn.2d 207, 212, 533 P.2d 123 (1975). Under that test, the failure to advise of the right to refuse consent is but one factor taken into consideration in deciding voluntariness. *Id.*

2

In *Ferrier*, the Washington Supreme Court faced a situation where officers desired to get inside a house to see if they could smell growing marijuana which they suspected was present on the basis of an unsupported tip. 136 Wn.2d at 106-07. The officers did not tell the occupant that she had the ability to refuse consent. *Id.* at 106, 108, 115. After being invited into the home, the officers asked for consent to search the residence. *Id.* at 107-08. A detective explained that this "knock and talk" procedure was used in order to avoid seeking a search warrant. *Id.* at 107. The Washington Supreme Court reversed the conviction, ruling that because the woman had a heightened right of privacy in her home under article I, section 7 of our constitution, officers could not enter a home to seek voluntary consent to search the dwelling without first informing her that she did not need to consent to the entry. *Id.* at 106. The court's analysis repeatedly emphasized the heightened protection given the home under our constitution. *Id.* at 106, 110, 113-16, 118.

The court then adopted the following rule:

> [W]hen police officers conduct a knock and talk for the purpose of obtaining consent to search a home, and thereby avoid the necessity of obtaining a warrant, they must, prior to entering the home, inform the person from whom consent is sought that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home.

*Id.* at 118.

The *Ferrier* court's emphasis on the protection of the home from warrant-evasive tactics was not simply the product of the facts of that case. Since then, the Washington Supreme Court has several times considered whether *Ferrier* governed when officers went to residences for purposes other than gaining entry with intent to obtain consent to search in lieu of obtaining a warrant. In each instance, the court has found that the different purpose in going to the residence took the case outside of the need for *Ferrier* warnings. *See State v. Khounvichai,* 149 Wn.2d 557, 69 P.3d 862 (2003) (*Ferrier* warnings not required where police request entry to a home merely to question or gain information regarding an investigation); *State v. Williams,* 142 Wn.2d 17, 27-28, 11 P.3d 714 (2000) (*Ferrier* warnings not required where police request consent to enter a home to arrest a visitor under a valid warrant); *State v. Bustamante-Davila,* 138 Wn.2d 964, 983 P.2d 590 (1999) (*Ferrier* warnings not required when police and Immigration and Naturalization Service agent gained consensual entry to defendant's home to serve a presumptively valid deportation order).

The Court of Appeals likewise has addressed and resolved *Ferrier* issues by focusing on the purpose for which the officers sought to enter a residence.[2] *E.g.,* *State v. Dodson,* 110 Wn. App. 112, 124, 39 P.3d 324 (*Ferrier* not applicable to officers

---

[2] This court treated a motel room as the equivalent of a house for *Ferrier* purposes in *State v. Kennedy,* 107 Wn. App. 972, 29 P.3d 746 (2001), *review denied,* 145 Wn.2d 1030 (2002).

looking on rural property for other man suspected in vehicle theft), *review denied*, 147 Wn.2d 1004 (2002); *State v. Johnson*, 104 Wn. App. 489, 505-06, 17 P.3d 3 (2001) (*Ferrier* warnings not necessary when officers went to house with probable cause to arrest suspect); *State v. Leupp*, 96 Wn. App. 324, 333-34, 980 P.2d 765 (1999) (*Ferrier* warnings not applicable when police officers arrived at a residence in response to a 911 call), *review denied*, 139 Wn.2d 1018 (2000).

This history of *Ferrier* application strongly suggests that the case addresses only a segment of house-related searches. It does not suggest that the heightened *Ferrier* warnings are applicable outside of the home.

The Washington Supreme Court has long distinguished houses from vehicles in the search and seizure context. One particularly instructive case is *State v. Vrieling*, 144 Wn.2d 489, 28 P.3d 762 (2000). There a deputy sheriff stopped a motor home and arrested the driver, Ms. Vrieling. *Id.* at 490-91. A search of the motor home was conducted incident to the arrest. *Id.* at 491. The question before the court was whether the then-existing vehicle search doctrine applied to the search of the house-like vehicle. *Id.* at 492. The court ultimately concluded that when a motor home is used as a vehicle, the vehicle search doctrine applied. *Id.* at 496. Two dissenting justices would have limited the search only to the driver's compartment and protected the living quarters of the motor home. *Id.* at 497 (Johnson, J., dissenting).

5

While *Vrieling* did not involve a consent search, its distinction between a home and a home-like vehicle for search purposes strongly indicates that the more typical vehicle driven here is not entitled to the protections afforded houses. If a vehicle with living quarters is not treated as a home, a car without those features cannot expect to be treated as home. *Vrieling* thus implies that the heightened search consent standard of *Ferrier* is not applicable to motor vehicles.

In reaching its conclusion, the trial court noted our decision in *State v. Tagas*, 121 Wn. App. 872, 90 P.3d 1088 (2004). That case involved a vehicle stop that led to the occupants needing to be transferred from the scene by the police. *Id.* at 874. The officer would not allow the passenger to carry her purse in the patrol car unless he first searched it. He did not offer her alternatives to the search. She consented to the search and evidence was discovered. *Id.* at 875. On appeal from a conviction, she argued that the *Ferrier* warnings should have been given to her. This court concluded that *Ferrier* did not apply, noting several instances in which the Washington Supreme Court had not required *Ferrier* warnings prior to consent searches at houses. *Id.* at 877-78.

The cited history of *Ferrier* and our court's treatment of the home as most deserving of heightened protection under our constitution leads us to conclude that *Ferrier* warnings need not be given prior to obtaining consent to search a vehicle. While it is undoubtedly best practice to give the full *Ferrier* warnings before any consent search

6

in order to foreclose arguments such as this one, nothing in our constitution requires those warnings other than in the "knock and talk" situation.

The trial court correctly denied the motion to suppress. The convictions are affirmed.

_____
Korsmo, J.

I CONCUR:

_____
Fearing, J.

7

31756-1-III

LAWRENCE-BERREY, J. (concurring) — Under current law, *Ferrier*[1] warnings are not required for vehicle searches. As an intermediary appellate court, we should be cautious not to grant new rights where our state Supreme Court has not indicated a willingness to expand existing rights. With that said, I am troubled when I see citizens being asked for permission to have their private effects searched where probable cause to search is lacking. Here, the officer knew he lacked probable cause to search the vehicle, he knew that an application for a search warrant would be denied, yet he asked for permission to search. In *Ferrier*, the court noted, "'[w]here the police have ample opportunity to obtain a warrant, we do not look kindly on their failure to do so.'" *State v. Ferrier*, 136 Wn.2d 103, 115, 960 P.2d 927 (1998) (quoting *State v. Leach*, 113 Wn.2d 735, 744, 782 P.2d 1035 (1989)). I might add, where the police lack authority to obtain a search warrant, we look even less kindly on their searching anyway.

The rights found in our state and federal constitutions must be applied equally to each person. Therefore, if courts are to protect the constitutional rights of *law abiding* citizens, courts must also protect the constitutional rights of *law breaking* citizens. These

---

[1] *State v. Ferrier*, 136 Wn.2d 103, 115, 960 P.2d 927 (1998).

rights are best protected by courts extending *Ferrier* warnings beyond residential searches. *Ferrier* merely requires law enforcement to advise persons of their rights—the right to refuse, the right to limit, and the right to revoke permission to search. Requiring law enforcement to advise citizens of their rights empowers citizens to knowingly assert their rights instead of unknowingly waive them.

It is consistent with this state's strong emphasis on privacy rights, founded upon article I, section 7 of our state's Constitution, that we extend rather than limit *Ferrier*. Article I, section 7 of the Washington Constitution provides: "No person shall be disturbed in *his private affairs, or his home invaded*, without authority of law." (Emphasis added.) I see no basis to limit *Ferrier* to home searches when the constitutional basis for *Ferrier* clearly applies beyond the home.

_____
Lawrence-Berrey, J.

I CONCUR:

_____
Fearing, J.

2